**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**BARBARA J. HASKINS**                                                **PLAINTIFF**

**VS.**                      **CASE NO. 3:06CV00231 JMM**

**BIG LOTS**                                                             **DEFENDANT**

**ORDER**

Plaintiff, Barbara Haskins, an African American female, brings this employment discrimination complaint alleging that defendant discriminated against her based upon race when defendant terminated her employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e). Defendant filed a Motion for Summary Judgment contending that plaintiff failed to establish a *prima facie* case of discrimination and failed to show that its legitimate nondiscriminatory reason for terminating plaintiff was pretext.

For the reasons stated below, defendant's motion is granted (#39).

I. *Facts*

Defendant is a national closeout retailer selling items ranging from everyday consumables and housewares to toys and seasonal goods. Plaintiff was hired by Brian Kitchens, the manager of defendant's Woodsprings Road store in Jonesboro, Arkansas, to work as a store associate on May 12, 2002. At the time of plaintiff's employment, Kitchens reported to Don Conoyer, a district manager for defendant. Mike Wilcox was defendant's district loss prevention manager and was responsible for investigating the allegations of refund fraud concerning plaintiff. Anthony Brock, an African American, was defendant's human resources manager who made the decision to terminate plaintiff's employment.

In April of 2004, Kitchens promoted plaintiff to the position of customer service supervisor. As a customer service supervisor, plaintiff's duties included taking care of the front of the store, keeping the store clean and stocked, greeting customers, operating a cash register as a cashier, and preparing refund vouchers.

Defendant's written refund policy requires a manager to approve any refund equal to, or greater than, $25.00. This refund policy calls for a store manager to approve the refund voucher and place his or her initials on the refund voucher. The employee must take the merchandise and receipt from the customer, and scan the merchandise to confirm a price before ringing up the refund transaction which results in a refund voucher. The refund voucher contains a place for the entry of a date and time.

The employee filling out the refund voucher should include on the back the customer's name, address, and phone number, the price of the merchandise and the SKU number of the item being returned, and they are to ask for the customer's signature. After the information is received from the customer, and management approval is acquired , the employee opens the register and gives the customer money and places the voucher in an envelope in his or her drawer.

When a customer service supervisor begins a shift at defendant's Woodsprings Road store, the register contains $100.00. At the end of the day, a cashier's register is balanced so that if a refund is made to the customer, and the money is not given to the customer, there would be an overage on that register. There was no overages for plaintiff's register.

Defendant routinely conducted video surveillance in its stores, including surveillance of all registers. After each of plaintiff's shifts when she took her cash tray from her register to the back of the store to be counted by a store manager when she is not on video surveillance.

On April 23, 2005, Kitchens noticed a refund voucher in an amount greater than $25.00 which had not been signed by management. On April 24, 2005, Kitchens reviewed the surveillance video of plaintiff's register for April 23, 2005 for the period of time the alleged refund occurred. The video tape of that day reflected that neither a customer or merchandise could be seen in the area of plaintiff's register for the period of time the alleged refund occurred.

After Kitchens reviewed the surveillance tape of April 23, 2005, he contacted Conoyer who instructed Kitchens to notify Wilcox of the situation concerning plaintiff and the suspect refund ticket. Wilcox advised Kitchens to review the surveillance tapes for the times plaintiff worked and processed refunds in the month preceding April 23, 2005. After review of this information, Kitchens reported to Conoyer and Wilcox suspicious refunds in the amount of $222.13 which had been processed by plaintiff on April 5, April 11, April 13, April 19, and April 23, 2005.

After Kitchens reviewed the surveillance tapes at issue and talked to Wilcox, Wilcox arrived at the store on April 27, 2005 to conduct his own investigation of the allegations concerning plaintiff.

Wilcox's investigation, which included viewing the video tapes and gathering facts, was submitted to Brock, an African American. Brock who is the sole decision maker regarding the firing of the employees in his region received the report and made a decision to terminate plaintiff's employment. His decision was based upon his assessment of the facts and Wilcox's investigation which included information provided by Kitchens. Brock did not know plaintiff, personally, prior to April of 2005.

Plaintiff did not come to work on April 28 or 29, 2005. On April 30, 2005, plaintiff was told that she was suspended pending an investigation of the refunds in question. Plaintiff did not contact Kitchens on May 2, 2005 as requested as part of the investigation. Plaintiff was informed

3

of her termination on May 5, 2005.

Plaintiff's Equal Employment Opportunity Commission ("EEOC") charge made claims of retaliation and race.  Plaintiff's complaint does not make a retaliation claim.  While plaintiff filed this action *pro se*, she was appointed counsel on May 29, 2007.

On April 25, 2005, plaintiff complained about Kitchens being a racist to Conoyer.  This was after the investigation into the suspect refunds had begun, but before she was suspended and terminated.   On this same date plaintiff complained to Conoyer that Richard Walters saw Tina Smith an employee of defendant switch tickets on an item and did nothing about it.   Brock was unaware of any complaints made by plaintiff when he made the decision to terminate her employment.

Plaintiff belief that Kitchens discriminated against her based upon her race is based upon her allegations that Kitchens (1) told her to watch African American shoppers to prevent shoplifting and did not ask her to do the same for Caucasian shoppers; (2) allowed Caucasian employees with more seniority to adjust her work schedule to take time off when he refused to do so for her; and (3) told another employee that he could not stand plaintiff's "black ass;" (4) fired an African American female and replaced her with a Caucasian female who had less experience; (5) harassed an African American with accusations of stealing furniture until that employee quit; and (6) referred to an African American employee as a "gang-banger" after the employee arrived at work with a "hoodie" on his head.

Plaintiff submitted a signed application for employment which she had read with defendant on May 9, 2002 which stated that "False information or omission of facts" on the application could result in discharge. At the time of her filling out the application, plaintiff was aware that she provided false information by stating that (1) she had completed four years of high school and

earned a diploma; (2) she gave false reasons for her termination from previous employment positions; and (3) she misrepresented her criminal history which included convictions for use of "hot checks," aggravated assault, fraudulent use of a credit card, and theft of property.

II. *Analysis*

Summary judgment is appropriate when there is no genuine issue of material fact and the dispute may be decided solely on legal grounds. *Altonen v City of Minneapolis*, 487 F.3d 554, 559 (8th Cir. 2007); Fed. R. Civ. P. 56. The initial inquiry is whether there are genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

A discrimination claim asserted pursuant to Title VII is analyzed under the *McDonnell Douglas* paradigm requiring the plaintiff to present a *prima facie* case of intentional discrimination. *Glegg v. Arkansas Department of Corrections,* 496 F.3d 922, 926 (8th Cir. 2007).

Once the plaintiff does this, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the action taken. *Id.* If the employer satisfies this burden, the burden of production shifts back to the plaintiff to demonstrate that the employer's proffered reason is pretext for unlawful discrimination. *Id.* To establish that an employer's legitimate, nondiscriminatory reason is pretext for discrimination, an employee must offer evidence for a reasonable trier of fact to infer discrimination. *Matthews v. Trilogy Communications, Inc.*, 143 F.3d 1160, 1165 (8th Cir. 1998).

To prove a claim of discriminatory discharge, plaintiff must show: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) there is evidence that gives rise to an inference of discrimination. *Green v. Franklin Nat. Bank of Minneapolis*, 459 F.3d 903 (8th Cir. 2006).

Plaintiff has failed to establish a *prima facie* case of discrimination based upon her race because she has failed to present sufficient evidence that would give rise to an inference of discrimination.

Plaintiff has failed to show that she was treated differently than any similarly situated employee who was not in plaintiff's protected class. Plaintiff's allegation regarding the Caucasian employee who was allowed to adjust her work schedule when plaintiff was not so allowed is without merit as the Caucasian employee was not similarly situated because she had seniority over plaintiff. There is no evidence that Kitchens was involved in any manner with Tina Smith's alleged ticket switching or that this Smith was similarly situated to plaintiff. Plaintiff admits that in May 2004, a Caucasian employee of defendant who was found to have committed fraud associated with her register was terminated.

The decision maker in this case was not Kitchens. The person who made the final decision to terminate plaintiff was Brock who based his decision on Wilcox's report which was formed after Wilcox watched the video of plaintiff's activities at the time of the suspect refunds and, as he testified, made his own personal assessment of the facts. Plaintiff has failed to come forward with any evidence that Wilcox did not make his own personal assessment of the facts.

Plaintiff contends that Wilcox's report and, thus, Brock's decision was somehow tainted by Kitchens. There is no evidence that Wilcox or Brock was influenced in any way by Kitchens's alleged discriminatory attitude toward plaintiff. Plaintiff has presented no evidence to rebut Kitchens's affidavits which state that the videos were kept in the ordinary course of business at the Jonesboro store and that the disk containing the videos that he turned over to Wilcox were a true and correct copy of the original videos, and that the receipts are true and correct copies of the refund vouchers in question.

While there is evidence that Kitchens alerted Wilcox to what he considered an improper refund voucher, there is no evidence that anything he did after that was inconsistent with defendant's policies regarding refund fraud. There is evidence that Wilcox watched the video of plaintiff's actions and formed his own opinion which he relayed to Brock who made the final decision.

Plaintiff admits that Kitchens had not made any derogatory comment to her about her race. The undisputed facts are that Kitchens originally hired and then promoted plaintiff and that Brock and

6

plaintiff are of the same race.  These facts further weaken any possible inference of racial discrimination. Plaintiff has not provided any evidence to support her conclusion that Wilcox and Brock were improperly influenced by Kitchens because of plaintiff's race.

Even if plaintiff had been able to establish a *prima facie* case, she has failed to rebut defendant's legitimate nondiscriminatory reason for the termination which was based upon defendant's determination that plaintiff had filed false refund vouchers.  The determination was based upon (1) the unapproved voucher prepared by plaintiff at a time when there were no customer's or merchandise shown on the video tape: (2) there being no evidence that money was returned to a customer at the observed portion of her counter; and (3) there being no overage on plaintiff's register.

Plaintiff admits that the video tape does not show any customers or merchandise at her counter during the times that she made out the suspect refund voucher.  She admits that the tape does not show her returning any money to a customer on the dates or the times that she filled out a refund voucher.  She contends, however, that the tape is of poor quality and is limited in its range of visibility so that it could be possible for a customer to be at her counter without being seen on the video tape.  She also offers alternative explanations which could explain her actions that were taped during the suspect time periods.

The Court has reviewed the video tape at issue and finds that the quality of the tape at the relevant time periods is sufficient to establish that there were no customers or merchandise on the visible portions of plaintiff's counter.

Denying that she committed refund fraud and having alternative explanations for her actions which she believes would exonerate her of defendant's belief that she prepared fraudulent voucher does not establish pretext.  *See Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 855 (8th Cir. 2005).  The question to be asked is whether the employer conducted a thorough investigation and believed in good faith that the employee engaged in the conduct which led to the employee's discharge. *Id*.

The overwhelming undisputed evidence is that defendant conducted a thorough investigation and believed in good faith that plaintiff committed refund fraud.  Defendant's conclusion that plaintiff committed refund fraud is entirely reasonable.   Plaintiff  has presented no evidence showing that defendant terminated her employment while believing she was innocent of misconduct.

Plaintiff also contends that there is a material dispute over who actually fired her because Kitchens rather than Brock signed her termination papers and informed her of her termination.  There is no dispute over this fact.  Brock testified that he made the decision to terminate plaintiff, not that he signed the termination papers.

In order to establish a Title VII retaliation claim the plaintiff bears the burden of showing that  ( 1) she engaged in protected conduct; (2) a reasonable employee would have found the challenged retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct.  *Burlington N. & Santa Fe Ry, Co. White*, 548 U.S. 53, 126 S.Ct. 2405, 164 L.Ed.2d 345 (2006).

Any claim that plaintiff might make regarding her retaliation charge raised in her EEOC complaint is dismissed as untimely because she failed to raise the claim in her complaint and because she has failed to provide any evidence that her discharge was causally linked to her complaints to Conoyer about Kitchens.   There is no evidence that Brock knew of her complaint to Conoyer about Kitchens, or that Conoyer misrepresented any evidence to Wilcox or Brock.  Brock testified that he relied on Wilcox's report and his own personal assessment of the facts.

III.  *Conclusion*

    Plaintiff's complaint is dismissed.  Judgment will be entered accordingly.

    IT IS SO ORDERED THIS   1   day of      February   , 2008.

                                                    James M. Moody
                                                United States District Judge